# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:24-cv-00160-MR

| | | |
|---|---|---|
| ERIC CHRISTOPHER ORR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| DAVID COTHRON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's

Amended Complaint, [Doc. 9],[1] filed under 42 U.S.C. § 1983. See 28 U.S.C.

§§ 1915(e)(2) and 1915A.  Plaintiff paid the filing fee in this matter.  [7/2/2024

Docket Entry].

## I.    BACKGROUND

Pro se Plaintiff Eric Christopher Orr ("Plaintiff") is a prisoner of the State

of North Carolina currently incarcerated at Maury Correctional Institution in

Maury, North Carolina.  On May 28, 2024, he filed this action pursuant to 42

U.S.C. § 1983, based on alleged events at Marion Correctional Institution

("Marion") in Marion, North Carolina.  [Doc. 1].  Plaintiff named seven

---

[1] Plaintiff filed a second Amended Complaint three days after his first Amended Complaint. [See Docs. 9, 10].  Because these documents are verbatim duplicates of each other and to avoid confusion in the record, the Court will strike the second-filed Amended Complaint.

individual Defendants, all identified as officials at Marion.  [Id. at 1-4].  In short, Plaintiff alleged that, on August 3, 2021, he was referred to Restrictive Housing for Control Purposes (RHCP) at Tabor Correctional Institution ("Tabor CI") for "excessive write-ups" for two A-level infractions, dated July 5 and July 6, 2021, respectively.  Over a month later, Plaintiff was sent to Marion and placed in its Rehabilitative Diversion Unit (RDU)[2] because of his RHCP status.  Less than two weeks later, one of the two infractions that resulted in his RHCP referral for excessive write-ups was dismissed, qualifying Plaintiff for medium custody.[3]  Plaintiff grieved "the situation," but staff refused to correct it.  Plaintiff remained in RDU through June 20, 2023. [Id. at 5-6].  Plaintiff claimed that his conditions of confinement at Marion violated his Eighth Amendment rights and that the failure to remedy his alleged improper placement in RDU violated his Fourteenth Amendment due process rights.  [Id. at 6].

Plaintiff's Complaint failed initial review for Plaintiff's failure to state a claim upon which relief may be granted. [Doc. 8].  The Court allowed Plaintiff 30 days to amend his Complaint to properly state a claim for relief in

---

[2] Plaintiff alleged that RDU involved "23/1" status with limited phone access.  [Doc. 1 at 5].

[3] The North Carolina Department of Adult Correction (NCDAC) inmate locator website shows that Plaintiff has been charged with and found guilty of 32 infractions since 2017, including one dated July 5, 2021.

accordance with the Court's Order or the Court would dismiss this action without prejudice and without further notice to Plaintiff. [Id. at 9-10].

Plaintiff timely filed an Amended Complaint, which is now before the Court on initial review. [Doc. 9]. In his Amended Complaint, Plaintiff names the following Defendants: (1) David Cothron, identified as Marion Programs Assistant Superintendent; (2) Derek Price, identified as a Marion Unit Manager; (3) Patricia Alston, identified as a NCDAC Inmate Grievance Examiner; (4) Monica Bond, identified as the NCDAC Chief Disciplinary Hearing Officer (DHO); (5) FNU Taylor, identified as a Marion Sergeant; (6) Robert Barker, identified as a Hearing Officer; and (7) FNU Kizer, identified as a Marion Correctional Officer. [Id. at 2-4]. Plaintiff sues Defendants in their individual and official capacities. [Id.]. Plaintiff alleges as follows.

On August 3, 2021, Plaintiff was referred to RHCP at Tabor CI for excessive write-ups for two "A infractions," dated July 5, 2021, and July 6, 2021, respectively. [Id. at 7]. On August 11, 2021, Plaintiff saw the "FCC[4] board" to explain that the write-ups were "not true." The FCC agreed with the RHCP recommendation. On August 26, 2021, Plaintiff told the "DCC[5] board" that the write-ups were "not true." The DCC board agreed with the

---

[4] Presumably the Facility Classification Committee.

[5] Presumably the Director's Classification Committee.

"icon placement" for 180 days, but also verified that Plaintiff would be released from RHCP and returned to general population if one of the two write-ups were dismissed. [Id.]. On September 2, 2021, the July 6, 2021 write-up was "sent back from Raleigh" to be reinvestigated. Plaintiff's rights were violated, presumably during this reinvestigation, because "they" did not speak to the staff member witness Plaintiff requested. [Id.].

On September 16, 2021, Plaintiff was sent to Marion for placement in the RDU. On September 29, 2021, Plaintiff saw the DHO at Marion, where "[t]he witness spoke on [Plaintiff's] behalf and the write up was dismissed." [Id.]. On October 9, 2021, Plaintiff submitted a grievance "pertaining to the situation," which was accepted by Defendant Price. On October 26, 2021, Defendant Price responded and "took no action," stating that Plaintiff's assignment to RHCP qualified him for the RDU. [Id.]. Plaintiff presumably appealed the denial of his grievance, and, on November 16, 2021, Defendant Cothron responded, agreeing with Defendant Price and stating that Plaintiff "fit the criteria for placement in the RDU." [Id.]. Because the July 6, 2021 write-up that qualified Plaintiff for the RDU had been dismissed, however, Plaintiff no longer qualified for RDU. [Id.].

Plaintiff submitted a grievance regarding the situation, which was received by Defendant Alston on November 17, 2021. [Id. at 8]. She

4

responded on November 19, 2021, finding no prison policy violation and no evidence of staff misconduct, thereby allowing Defendants Cothron and Price to violate Plaintiff's constitutional rights. Defendant Alston, "as the superior in Raleigh at the Grievance Resolution Board … [i]s suppose to address this[.]" As Unit Manager, Defendant Price was tasked with ensuring that inmates on his unit were classified correctly. As Program Assistant Superintendent, Defendant Cothron "[i]s over all programs [and] classification" and failed to "correct for Plaintiff. … Plaintiff remained on this 23/1 control status against his will until 6-20-23, because of their actions." [Id.]. RDU, which is supposed to be a 13-month program, "was unhealthy [and] overcrowded" and involved "limited access to the telephone." [Id. at 9]. "A 23/1 hour lockdown is a lockdown inside of a cell[,] which is basically a bathroom with a bed in it." [Id.].

While in RDU Plaintiff received a write-up from Defendant Kizer on Defendant's Taylor's shift for Plaintiff's alleged refusal to exit the shower. Defendant Barker found Plaintiff guilty, and Plaintiff appealed. Plaintiff "received another infraction around 18 months" for "making more than one phone call." [Id.].

Plaintiff claims false imprisonment and violation of his Eight and Fourteenth Amendment rights. [Id. at 3]. For injuries, Plaintiff claims he

suffered "constitutional injury." [Id. at 6]. He also alleges that his "[m]edical records show[ ] the emotional distress" and that his "blood pressure wasn't affected like this until this occurred." [Id. at 9]. He purports to seek $100,000 in punitive damages and "medium custody demotion." [Id. at 6].

## II.    STANDARD OF REVIEW

Because Plaintiff is proceeding pro se, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520

(1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023).

### A. Fourteenth Amendment

Plaintiff appears to claim that Defendants Price, Cothron and Alston violated his Fourteenth Amendment rights by failing to remedy Plaintiff's alleged misplacement in the RDU on Plaintiff's grievance. [See Doc. 9 at 7-8]. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Taking Plaintiff's

allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a claim under the Fourteenth Amendment based on the denial of his grievance. As noted on initial review of Plaintiff's original Complaint, there is no functional difference between denying access to a specific grievance procedure and denying relief sought in an accepted grievance. The Court, therefore, will dismiss this claim.

Plaintiff also appears to claim that his initial referral to RHCP and/or RDU or his continued placement in RDU violated his due process rights. The Fourteenth Amendment provides that "[n]o State shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. "Thus, despite the fact that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, … a prisoner's liberty does not disappear entirely.'" Kimble v. Swink, No. 22-6437, 2024 WL 688105, at *4 (4th Cir. Feb. 20, 2024) (quoting Thorpe v. Clarke, 37 F.4th 926, 942 (4th Cir. 2022) (internal quotations and citation omitted)). In the Fourth Circuit, "prisoners retain a liberty interest in avoiding confinement conditions that impose 'atypical and significant hardship on the inmate in relation to the ordinary incident of prison life,' provided they can first establish that interest 'arise[s] from state policies or regulations.'" Thorpe, 37 F.4th at 942 (quoting Incumaa v. Stirling, 791 F.3d 517, 526-27

(4th Cir. 2015)).  While the "baseline for atypicality" may shift depending on the "prisoner's conviction and sentence," Prieto v. Clarke, 780 F.3d 245, 253 (4th Cir. 2015), "the general population is the baseline for atypicality for inmates who are sentenced to confinement in the general population and have been transferred to security detention while serving their sentence," Incumaa, 791 F.3d at 527.  Where the conditions at issue do not impose an atypical and significant hardship in relation to the general population, there is no liberty interest at stake.  See Kimble, 2024 WL 688105, at *4.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, he has nonetheless failed to state a due process claim based on his continued placement in RDU.  Plaintiff alleges that, once his July 6, 2021 "write-up" was dismissed on September 29, 2021, he no longer qualified for RHCP and should have been transferred out of RDU to medium custody.  Plaintiff asserts that he remained in RDU "against his will" until June 20, 2023.  Plaintiff also seems to allege that, although RDU is supposed to be a 13-month program, he was charged with two infractions while in the program that may have extended his time there.  As to the RDU conditions, Plaintiff alleges only that he was on "23/1 lockdown,"[6] that it was "unhealthy

---

[6] The Court accepts this as meaning that Plaintiff was confined to his cell for 23 hours a day and allowed to leave his cell for one hour a day.

[and] overcrowded," and that he had limited phone access. These alleged conditions are not sufficiently atypical and harsh when compared to the general population to establish a due process liberty interest. See Kimble, 2024 WL 688105, at \*5-\*7 (reviewing conditions deemed sufficiently atypical and harsh in prior decisions and finding the alleged RDU conditions insufficient to establish liberty interest). Without a liberty interest at stake, there can be no due process violation. The Court, therefore, will dismiss this claim.[7]

## B.    Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and

---

[7] To the extent Plaintiff seeks to state a due process claim based on the conduct of the reinvestigation of the July 6, 2021 write-up, Plaintiff's allegations are again too vague and conclusory to state a claim for relief. Moreover, Plaintiff alleges that the write-up was dismissed after "the witness" spoke on Plaintiff's behalf before the DHO at Marion.

uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." <u>Dixon v. Godinez</u>, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir. 1993).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has again failed to state an Eighth Amendment conditions of confinement claim. The conditions alleged by Plaintiff do not rise to the level of an extreme deprivation necessary to state such a claim. That is, Plaintiff alleges only that for approximately 21 months he was on lockdown for 23 hours a day and that his telephone privileges were limited. Plaintiff has also failed to allege "a serious or significant physical or emotional injury resulting from the challenged conditions." <u>Strickler</u>, 989 F.2d at 1381. He alleged only that his medical records showed "emotional distress" and that his blood pressure "wasn't affected … until this occurred." The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim.

The Court declines to exercise supplemental jurisdiction over Plaintiff's purported false imprisonment claim because no federal claim has passed

initial review.  See Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018) (when a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims."); 28 U.S.C. § 1367(c)(3).  Accordingly, this claim is also dismissed.

Because Plaintiff failed to amend his Complaint in accordance with the Court's Order and has otherwise properly failed to state a claim for relief, the Court will dismiss this action with prejudice.  See Green v. Wells Fargo Bank, N.A., 790 Fed. App'x 535, 536 (4th Cir. 2020).

## IV.    CONCLUSION

For the reasons stated herein, the Court will dismiss Plaintiff's Second Amended Complaint with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Amended Complaint [Doc. 9] is **DISMISSED with prejudice** in accordance with the terms of this Order for Plaintiff's failure to state a claim for relief.

**IT IS FURTHER ORDERED** that Plaintiff's "Amended Complaint" [Doc. 10] is hereby **STRICKEN** from the record in this matter.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: September 2, 2024

Martin Reidinger
Chief United States District Judge